FILED

2009 May-04  PM 03:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

|                                  |     |                    |
| -------------------------------- | --- | ------------------ |
| **BETHANY NICKENS,**             | )   |                    |
| **PLAINTIFF,**                   | )   |                    |
| **VS.**                          | )   | **5:07-cv-2207-JHH** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,** | ) |          |
|                                  | )   |                    |
| **DEFENDANT.**                   | )   |                    |

## MEMORANDUM OF DECISION

Plaintiff Bethany Nickens brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the decision of the Commissioner of Social Security denying her application for disability income insurance (DIB) under Title II of the Social Security Act and supplemental security income (SSI) under Title XVI of the Act.[1] For the reasons set forth below, the decision is due to be affirmed.

---

[1]  In general, the legal standards are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.  See Borden v. Astrue, 494 F. Supp.2d 1278, 1280 n.1 (N.D. Ala. 2007).

## I.  PROCEDURAL HISTORY

Plaintiff filed her application for DIB and SSI on August 2, 2005, alleging a disability onset date of May 1, 2004.[2]  The  application was denied initially and also upon reconsideration.  Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ).  The hearing was held on June 4, 2007 in Decatur, Alabama.  (Tr. 428-45.)  In his August 6, 2007 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act and thus ineligible for DIB and SSI.  (Tr. 23.)  After the Appeals Council denied plaintiff's request for review of the decision of the ALJ, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the decision of the ALJ, see 42 U.S.C. § 405(g); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the correct legal standards were applied.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  Sections 405(g) and

---

[2] Although the opinion of the ALJ cites a December 2, 2004 onset date, plaintiff amended her disability onset date to reflect the May 2004 date.  (See Tr. 49.)

1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. See id. (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence. Dyer, 395 F.3d at 1210 (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). "It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Martin, 894 F.2d at 1529 (quoting Bloodsworth, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. Phillips v. Barnhart,  357 F.3d 1232, 1240 n.8 (11th Cir. 2004). While the court acknowledges that judicial review of the findings of the ALJ is limited in scope, the court also notes that review "does not yield automatic affirmance.." Lamb, 847 F.2d at 701.

### III.  ADMINISTRATIVE RECORD

At the time of the hearing, plaintiff was thirty-four (34) years old, and had a high school education.  (Tr. 21, 68, 433.)  Plaintiff previously worked as a financial services representative. (Tr. 62.)  Plaintiff alleges total disability due to a spinal fusion, fibromyaligia and partial complex seizures.  (Tr. 61.)  According to plaintiff, due to these injuries she  has been unable to engage in substantial gainful activity since May 1, 2004.  (Tr. 49.)

At the hearing, the plaintiff testified that she has degenerative disc disease, for which she has had two back surgeries.  (Tr. 435.)  She also stated that she has fibromyalgia, seizure disorder[3] and chronic arthritis in her feet.  (Tr. 435-36.)  Her most painful diagnosis, however, resulted from the back surgeries.  (Tr. 436.)  She testified that since her last back surgery in May 2004, she has been unable to work because of the chronic pain.  (Id.)  She alleges that she cannot lift anything over ten pounds and is unable to pick up her son, who is four years old.  (Tr. 436-37.)

Plaintiff also testified that she can only stand for less than five minutes at a time before she feels extreme pain "like there's a knife in [her back] at [her] sciatic nerve."  (Tr. 437.)  As far as sitting in one place, plaintiff stated that she could sit in a chair "at the most, maybe 20 minutes, maybe 25," but that she would have to

---

[3] Plaintiff testified that her seizure disorder is controlled with medication.  (Tr. 435.)

get up and walk around.  (Id.)  She stated that most of the time she lays down .
(Id.)

Plaintiff testified that she spends probably eighty to eighty-five percent of a
regular eight-hour workday trying to control her pain.  (Id.)  To control her pain,
plaintiff takes pain medication and uses some techniques she learned in "pain
classes."  (Id.)  She also uses heat and ice-packs.  (Id.)  However, plaintiff testified
that she is never comfortable and that the pain is chronic, twenty-four hours a day,
seven days a week.  (Tr. 438.)  Standing and sitting in one spot for too much time
worsens the pain, and an increase in activity increases her pain symptoms.  (Id.)

Plaintiff further testified that she does not sweep or mop; she does not
"crouch down or bend."   (Id.)  She does drive a car, usually to her parents house
which is one street from hers, or to the drug store.  (Id.)  She has difficulty
driving, however, and had to put her seat all the way forward so that her knees
touch the dashboard because she cannot stretch her right leg that far.  (Id.)
Plaintiff stated that she spends most of her day laying on her bed, her son's bed or
the couch and that she only sees her family.  (Tr. 439.)  The ALJ also noted that

during the hearing the plaintiff was holding a cane, which plaintiff testified Dr.

Graham prescribed for her because of a problem with balance in her feet.[4]  (Id.)

The plaintiff is married, lives with her husband, and has a four year old son.

(Tr. 439-40.)  Although her son is active, plaintiff testified that she is not active

with him, but that his father helps with him, as well as plaintiff's sister.  (Tr. 440.)

She stated that her son has learned her limitations and understands "what mama

can and can't do for him."  (Id.)  Plaintiff's husband does not work, but is on

disability because "he has no peripheral vision in either eye."  (Id.)

## IV.  THE DECISION OF THE ALJ

Determination of disability under the Social Security Act requires a five

step analysis.  See 20 C.F.R. § 404.1520.  First, the Commissioner determines

whether the claimant is working.  Id.  Second, the Commissioner determines

whether the claimant has an impairment which prevents the performance of basic

work activities.  Id.  Third, the Commissioner determines whether claimant's

impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the

regulations.  Id.  Fourth, the Commissioner determines whether the claimant's

residual functional capacity can meet the physical and mental demands of past

_____

[4]  According to plaintiff, she does not have any feeling toward the bottom of her feet.
(Tr. 439.)  She testified that the numbness is due to damage to her sciatic nerve.  (Id.)

work.  Id.  The claimant's residual functional capacity (RFC) is what the claimant can do despite his impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  Id.  In making this final determination, the Commissioner will use the Medical-Vocational guidelines in Appendix 2 of part 404 of the regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that "the claimant must establish a prima facie case by demonstrating that he can no longer perform his former employment."  Freeman v. Schweiker, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once plaintiff shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment."  Id.

The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.  (Tr. 16.)  Next, the ALJ found that the plaintiff had the following severe combination of impairments: "history of back

7

surgery in December 2003 and July 2004; fibromyalgia; history of seizure disorder; and degenerative disc disease." (Id.)  The ALJ then determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  (Id.)  Next, the ALJ found that, despite her impairments, plaintiff retained the residual functional capacity to perform a sedentary work with the limitations including a sit/stand option, no climbing or working around heights, and occasional stair climbing.  (Tr. 17.)

Based on the testimony of the vocational expert and her RFC, the ALJ determined that the plaintiff was unable to return to any of her past relevant work as a financial services representative or customer service representative.  (Tr. 21.)  However, considering the plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert, the ALJ found that there are jobs in the national economy that exist in significant numbers that the plaintiff can perform.  (Tr. 21-22.)  Therefore, the ALJ found that the plaintiff was not under a disability, as defined by the Act, from her alleged onset date of December 2, 2004 through the decision date of August 6, 2007.  (Tr. 22.)

## V.  PLAINTIFF'S ARGUMENT FOR REMAND OR REVERSAL

The plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals

8

Council, reversed, or in the alternative, remanded for further consideration. Plaintiff argues that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied for the following reasons: (1) the ALJ improperly applied the three-part pain standard and thus erroneously rejected plaintiff's complaints of pain; and (2) the ALJ failed to give proper weight to the opinion of plaintiff's treating physician.  The court discusses each argument in turn.

### A.  The ALJ Properly Applied the Pain Standard

Plaintiff first alleges that in determining her ability to work, the ALJ failed to appropriately evaluate her alleged pain and subjective symptoms.  (Doc. # 7 at 3-7).  The Act and its related regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability.  See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929.  Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged.  See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and

either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain.  See 20 C.F.R. § 404.1529; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Holt, 921 F.2d at 1223; Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).  If the ALJ fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain.  See 20 C.F.R. § 416.929(b) (2006); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable."  Marbury, 957 F.2d at 839.  Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was

properly applied, Holt, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard, Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In this case, the court finds that the ALJ's analysis comports with the requirements of the Eleventh Circuit's "pain standard" for evaluating plaintiff's subjective complaints.  Here, the ALJ cited 20 C.F.R. § 404.1529 and considered plaintiff's symptoms and subjective complaints in light of the standards outlined therein.  (Tr. 17-21.)  The ALJ determined that plaintiff's statements concerning her pain and its impact on her ability to work are not entirely credible because they are inconsistent with: (1) the objective findings in the medical evidence; (2) plaintiff's daily life activities; and (3) plaintiff's reports to physicians regarding her medical conditions that are not supported by the record.   These three components of the ALJ's analysis are discussed in more detail below.

### 1.   The Objective Medical Findings Support the ALJ's Decision Regarding Plaintiff's Credibility.

The ALJ's opinion demonstrates a thorough inventory of the medical evidence of record, which led to his appropriate determination that plaintiff's pain complaints are not consistent with the objective evidence.  As to plaintiff's seizure

disorder, the record indicates that plaintiff's condition was well controlled with medication.  The plaintiff last saw her treating neurologist in April 2003, after more than eight (8) years without treatment by Dr. Boyer.  (Tr. 164.)  In April 2003, plaintiff reported that she had not had a seizure in about three years and that her seizures were controlled by medication.  (Id.)  Dr. Boyer completed a complete neurological exam and the results were normal.  (Tr. 165.)

As to her complaints of disabling back pain, there is no objective medical evidence confirming the severity of plaintiff's alleged pain arising from her back surgery and degenerative disc disease.[5]  She first reported back pain and numbness in the right leg in early December 2003 and was referred to Dr. Larry Parker for further evaluation.  Plaintiff underwent the first of two back surgeries on December 29, 2003 for a right slipped disc.  (Tr. 209.)  Although at her first follow-up with Dr. Parker, plaintiff reported that "[h]er leg pain is resolving nicely," on January 29, 2004, she called and reported lower back pain radiating down both legs.  (Tr. 208.)  At the time, plaintiff was working full-time and doing

---

[5]  There is also very little in the way of medical records regarding plaintiff's fibromyalgia.  Most complaints of pain relate to her back, although there are sporadic and generalized  complaints of general pain relating to her fibromyalgia.  (See tr. 178-80, 237, 293-96.)

a lot of activity, but stated that her legs felt better when she rested.  (Id.)  Dr.

Parker recommended a couple of days on bedrest.  (Id.)

      Plaintiff's pain continued into the early part of 2004, and Dr. Parker ordered

an MRI.  (Tr. 206-07.)  The MRI showed an epidural scar and collapse of her disc.

(Tr. 207.)  Plaintiff reported that the pain was interfering with work and that she

was limited in taking care of her 17 month old son.  (Id.)  Dr. Parker and plaintiff

decided that surgery would be the best course of action to alleviate the pain.  (Id.)

      In early May 2004, Dr. Parker performed a second back surgery, and a week

later, plaintiff reported that "she was pleased with her result" and that "her right

leg pain has resolved nicely."  (Tr. 205.)  Her physical examination that day was

good with 5+/5 motor strength, normal sensation to light touch and pinprick, and

good range of motion of the hips, knees and ankles without any pain. (Id.)  X-rays

of her spine showed the fusions in good position.  (Id.)  Two months later, on July

1, 2004, Dr. Parker reported similar physical findings and noted that plaintiff was

"doing very well" and was "pleased with her results."  (Id.)  Dr. Parker told

plaintiff that she could increase her physical activities, as tolerated, and scheduled

a follow-up in two to three months.  (Id.)  There is no evidence in the record,

however, of any further treatment by Dr. Parker.  There is certainly nothing in Dr.

Parker's most recent medical findings that support plaintiff's allegations regarding

the severity of her pain.  Instead, his findings show improvement in plaintiff's condition with no complaints of pain after the second surgery.

The next time the medical records mention back pain is more than one year later, on July 23, 2005, when plaintiff presented to the emergency room with pain in her back, between her shoulders.  (Tr. 227-28.)  She was diagnosed with an "acute myofascial strain - dorsal" and given medication for the pain.  (Tr. 228.)  Two days later, she saw her primary physician, Dr. Graham, and again reported pain between her shoulder blades, but that the medication helped.  (Tr. 232.)  The doctor's notes are illegible as to his treatment.  (Id.)  On August 11, 2005, plaintiff returned to Dr. Graham for a refill of her "pain meds and steroids" and stated that her feet were swelling and that she had pain in her back and right leg.  (Tr. 231.)  Dr. Graham prescribed Lortab 10, as well as a diuretic.  (Id.)

There is no further mention of back pain in Dr. Graham's records for the year 2005, only one specific complaint of back pain in the year 2006, and one complaint of pain in the neck, radiating down to the back, in May 2007.  (Tr. 318-21, 395-402.)  There are multiple requests by plaintiff for refills of her Lortab, some of which were granted, and some of which were denied, by Dr. Graham.  (Tr. 318-21.)  She also requested a referral to a pain clinic.  (Id.)

14

Plaintiff began treatment with the Alabama Pain Center on July 25, 2006 and continued on a monthly basis.[6]  (Tr. 361-75.)  On August 16, 2006, she received lumbosacral facet injections and a right sacroiliac joint injection.  (Tr. 371-74.)  Following the procedures, plaintiff had "complete resolution of pain to the low back, hips, and bilateral lower extremity . . . .  There was a full range of motion to the low back without recurrent pain with prolonged sitting and standing."  (Tr. 372.)  Two weeks later, however, plaintiff complained of a dull burning sensation with intermittent stabbing in her hip.  (Tr. 369.)  Two months later, in October 2006, plaintiff reported that she was doing better than before she came to the Alabama Pain Center and that her medication was working well.  (Tr. 368.)  Her records in 2007 similarly report that her medication is working well, she is pleased with the pain control, but that colder weather increases her pain.  (Tr. 361-66.)  Plaintiff's last record before the hearing indicated that plaintiff continued to take medications, including Lortab, to control her pain.  (Tr. 361.)

Given the above medical evidence, it was entirely appropriate for the ALJ to discredit plaintiff's testimony regarding the degree of her pain.  The discrepancies between the clinical findings, reports by the plaintiff to her

---

[6] Plaintiff was also enrolled in pain management therapy classes as part of her treatment at the Alabama Pain Center.  (Tr. 376-92.)

physicians, and other medical findings support the decision of the ALJ.   See
Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991) (reasoning that ALJ
properly doubted plaintiff's allegations of disabling pain where there were "no
clinical findings indicative of a back impairment of the degree of severity
described by [the plaintiff]").

### 2. Plaintiff's Daily Life Activities Support the ALJ's Decision Regarding Plaintiff's Credibility.

Further support for the ALJ's decision to discount plaintiff's subjective
complaints is found in the lack of evidence suggesting that plaintiff's daily
functioning is significantly deficient. (Tr. 20.)  In October 2005, after her alleged
disability onset, plaintiff reported that she did most of the household cleaning,
including cleaning the toilets, vacuuming, doing the laundry and washing the
dishes, albeit with frequent rest breaks.  (Tr. 294.)  Although she stated that she
did not cook, plaintiff drives, shops for groceries and is able to take care of all her
personal needs, such as bathing, dressing, eating, and the like.  (Tr. 294, 438.)
Additionally, in a March 2006, almost two years after her alleged disability onset,
plaintiff reported that she prepares light meals, goes shopping with her husband,
takes care of her son, performs household chores such as cleaning, laundry and
ironing, reads, watches television, visits with family, and occasionally goes to the

movies and out to dinner.  (Tr. 70-72.)  Plaintiff also has a four-year-old son, and although she testified at the hearing that her husband helps a lot with him, she also testified that her husband is disabled due to the loss of his peripheral vision in both eyes.  (Tr. 440.)

While it is clear in this Circuit that "participation in everyday activities of short duration" does not mean that a claimant is not disabled, Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), such activities are relevant to the matter of plaintiff's credibility.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); Dyer v. Barnhart, 395 F.3d 1206 (11th Cir. 2005) (finding that ALJ properly considered claimant's daily activities, frequency of symptoms, medications, and found subjective complaints were inconsistent with plaintiff's medical record).  Indeed, the Eleventh Circuit has affirmed adverse credibility findings based on evidence of ability to perform daily activities such as those present in this case.  See Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)(affirming adverse credibility finding in light of claimant's ability to drive, provide childcare, bathe, care for herself, and perform housework); Graham v. Apfel, 129 F.3d 1420, 1421-22 (11th Cir. 1997) (reasoning that activities such as child  care, attending school, and performing household chores supported ALJ's conclusion that Plaintiff could perform light work).  Thus, evidence indicating that plaintiff is not

totally incapacitated with respect to her daily functioning, especially when considered in combination with the objective medical evidence of record, supports the ALJ's finding that plaintiff's subjective complaints are not entirely credible.

### 3. Inconsistent and/or False Reports to Physicians Support the ALJ's Decision Regarding Plaintiff's Credibility.

The third reason provided by the ALJ for discrediting plaintiff's testimony was that she made two reports to doctors that were not supported by the record. (Tr. 20-21.)  First, in October 2005, plaintiff reported to Dr. Gill that she had experienced a seizure three months before the examination and that she was being treated and monitored by her neurologist, Dr. Boyer, regarding her seizure disorder.  (Tr. 293.)  However, the medical records show that plaintiff had last seen Dr. Boyer in April 2003 and reported to him that she had not had a seizure in three years and that her seizures were well controlled by her medication. Additionally, in records from the Alabama Pain Center dated August 16, 2006, the plaintiff reported that it had been at least two years since her last seizure.  Second, plaintiff reported to Dr. George that she had a "mild organic brain syndrome." There is no evidence in the record of any physician diagnosing plaintiff with any type of brain syndrome.

Plaintiff's inconsistent and/or false reports to her physicians is a valid reason for questing plaintiff's credibility.  An ALJ may use ordinary techniques of credibility evaluation, such as prior inconsistent statements concerning symptoms and other testimony by the claimant that appears less than candid, in determining whether a claimant's testimony is credible.  See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

In summary, as evidenced by the medical evidence outlined above, the ALJ's decision to discredit plaintiff's subjective complaints of pain to the extent that they are inconsistent with plaintiff's ability to perform sedentary work with the restrictions noted is well-founded.  Although reasonable minds may differ as to whether the objective medical impairments could reasonably be expected to produce the degree of pain alleged by plaintiff, this determination is a question of fact.  See Hand v. Heckler, 761 F.2d 1545, 1548-49 (11th Cir. 1985).  Because the ALJ's decision to discount plaintiff's subjective complaints is supported by substantial evidence, it will not be disturbed.  See Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989) (finding that where, as here, the ALJ specifically articulates at least three reasons for rejecting the claimant's subjective complaints of pain, the ALJ properly discredited plaintiff's testimony).

### B.  Weight Accorded to Plaintiff's Treating Physician

Plaintiff also contends that the ALJ improperly discounted the opinion of her treating physician, Dr. Jerry M. Graham, when reaching his disability conclusion.    To the contrary, the court finds that the ALJ applied proper legal standards when weighting the evidence submitted by Dr. Graham, and that his conclusions are supported by substantial evidence.

The weight properly afforded to a medical opinion regarding the nature and severity of a plaintiff's impairments depends upon a number of factors, including the source's examining and treating relationship with the plaintiff, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source.  See 20 C.F.R. § 416.927(d). The opinion of a physician, even a treating physician, may properly be discounted for good cause.  Crawford v. Commissioner, 363 F.3d 1155, 1159-60 (11th Cir. 2004).  Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2003) (affirming the ALJ's decision to give little weight to a treating physician's opinion

20

due to several specific contradictions between the physician's opinion and other evidence of record). Nonetheless, if the ALJ has failed to articulate "good cause' for assigning less weight to a treating physicians's opinion, reversible error has occurred. <u>Lewis</u>, 125 F.3d at 1440.

The opinion of the ALJ indicates that he gave substantial consideration to all of Dr. Graham's treatment notes and opinions about plaintiff, with one exception. The ALJ discredited the ultimate opinion of plaintiff's treating physician, Dr. Graham, that plaintiff was disabled and unable to work, a statement Dr. Graham first made in a letter dated July 11, 2005 and again in a letter dated April 4, 2006. (Tr. 18.) Although the ALJ gave specific reasons for discrediting these two statements, Nickens contends that those reasons are not supported by the record. The court disagrees.

As to the first statement, Dr. Graham wrote the first letter on July 11, 2005 "to whom it may concern" after Nickens requested a letter "stating that she was unable to work due to back problems because she needed it . . . for Trevor [her husband] to receive free help in Birmingham." (Tr. 233, 282.) Dr. Graham complied with Nickens' request and wrote a letter stating that she was unable to work due to chronic problems with her back and that she has difficulty lifting and "getting around." (Tr. 282.) The ALJ gave little weight to this opinion because

"the claimant had no complaints of back pain at that time" and because "one could assume that she only requested the letter in order for her husband to get free medical help."  (Tr. 18.)

Nickens argues that the refusal to give Dr. Graham's opinion substantial weight is not supported by substantial evidence because "[t]he medical evidence establishes that the plaintiff was in fact complaining of back pain prior to that time."  (Doc. #8 at 9.)  Plaintiff cites to three items in support of her argument: (1) a note in Dr. Graham's records dated December 4, 2004, that plaintiff was complaining of "fibromyalgia pain" and "would like steroid shot" (tr. 237); (2) the medications plaintiff was taking in December 2004 (tr. 237); and (3) that on July 23, 2005 plaintiff presented to the emergency room with back pain.  (Doc. #8 at 9.)  That plaintiff complained of fibromyalgia pain six months before Dr. Graham drafted his letter and her medications do not support plaintiff's contention.  In fact, the six months of silence regarding any pain whatsoever in Dr. Graham's records support the finding of the ALJ.  In addition, plaintiff reported to the emergency room almost two weeks <u>after</u> the letter was written by Dr. Graham.  Such evidence does not support the opinion letter of Dr. Graham as it had yet to occur at the time Dr. Graham wrote the letter.  There is simply no evidence in the record that

plaintiff was complaining of back pain anywhere near the time Dr. Graham opined that she was unable to work due to back pain.

As to the second statement, Dr. Graham drafted another letter on April 4, 2006 "to whom it may concern" stating that plaintiff "is disabled due to pain from . . . chronic back problems, spinal fusion done in December 2004,[7] [and] fibromyalgia.  Mrs. Nickens is not able to sit or stand for long periods of time and has no feeling in her right leg."  (Tr. 296.)  The ALJ gave little weight to Dr. Graham's opinion because Dr. Graham had not seen the plaintiff in more than eight months.  (Tr. 18.)

Nickens argues that the refusal to give Dr. Graham's opinion substantial weight is not supported by substantial evidence.  In support of this argument, plaintiff contends that "[t]he ALJ appears to have discounted the evidence that documents that only three months later, on July 25, 2006, she began treatment with the Alabama Pain Center and pain classes for her continued back pain for which she continued to be prescribed Lortab 10."  (Doc. #8 at 9-10.)  This evidence is irrelevant to Dr. Graham's opinion.  At the time Dr. Graham made the statement that Nickens was "disabled," plaintiff had not attended the pain clinic;

---

[7]  It is undisputed that this date is incorrect.  Her spinal fusion was performed in May 2004.  (Tr. 433-34.)

that information was not available to him because it had yet to occur.  Moreover,

Nickens had not complained of anything, much less back pain, for over eight

months when Dr. Graham wrote the letter stating that she was "disabled."  As

such, the ALJ's finding is supported by substantial evidence.

Notwithstanding the above, it was entirely appropriate for the ALJ to give

less than controlling weight to Dr. Graham's opinion on the ultimate issue of

disability.  It is well-settled that although an ALJ can consider opinions from

acceptable medical sources on such issues as a claimant's RFC and whether a

claimant is disabled, "the final responsibility for deciding these issues is reserved

for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); see

SSR 96-5p, 61 Fed. Reg. 34471 (1996).  Thus, the court finds that the ALJ's

treatment of Dr. Graham's medical opinions was appropriate, guided by proper

legal standards, and supported by substantial evidence.


## VI.  CONCLUSION

The court concludes that the determination of the ALJ that plaintiff is not

disabled is supported by substantial evidence and proper legal standards were

applied in reaching this determination.  The Commissioner's final decision is due

to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

   **DONE** this the  4th  day of May, 2009.

_James H. Hancock_

SENIOR UNITED STATES DISTRICT JUDGE
